IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 17–cv–00022–CMA–KMT

MICHAEL SCOTT SMITH,

    Plaintiff,

v.

CHEYENNE MOUNTAIN SCHOOL DISTRICT 12,

    Defendant.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This matter is, in effect, an administrative appeal. It comes before the court by way of complaint, filed by *pro se* Plaintiff Michael Scott Smith on January 3, 2017. Since that time, Plaintiff has filed an opening brief, dated July, 26, 2017.[1] Defendant Cheyenne Mountain School District 12 has filed a response, dated March 12, 2018. (Doc. No. 39.) A reply was filed on March 26, 2018. (Doc. No. 43.) The Administrative record ("AR") has also been conventionally filed in this case in the form of a CD Rom.[2] (Doc. No. 27.) For ease of reference, the administrative decision of ALJ Tanya T. Light, dated October 3, 2017, is attached in Schedule A.

---

[1] The terms Plaintiff and Defendant will be used to describe the parties despite the posture of this case being more akin to an appeal, than a trial at first instance.

[2] The passing of time between opening and responsive briefing was caused by the filing and procedural errors of the parties. This is explained in full in a previous order (incorporated herein). It need not be reiterated here. (Doc. No. 41.)

## INTRODUCTION

This case involves action brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. challenging the administrative decision of ALJ Tanya T. Light. Plaintiff alleges that his child, R.S., has been denied relief under the statute.

Under the statute's provisions, states that receive federal educational assistance must establish "policies and procedures to ensure" that "free appropriate public education" ("FAPE") is available to disabled children. *See* 20 U.S.C. § 1412(a)(1)(A). Its purpose, therefore, is to ensure "that all children with disabilities have access to FAPE designed to meet their unique needs." *Murray v. Montrose County School District RE-JJ*, 51F.3d921, 927 (10th Cir. 1995) (quotations and alterations omitted). To fulfill this purpose, an individualized education program ("IEP") is the basic mechanism through which each child's individual goals are achieved. *Id*. The statute sets forth detailed procedures through which an IEP is to be developed. *Id.* The IEP is a detailed written document that describes the student's educational goals for an academic year and establishes a plan to achieve those goals. *Id.*

Notwithstanding the vast array of provisions (and the acronyms that come with them), it is safe to say that the statute is one of the more complex in the federal system—not just its review and regulatory requirements, but its procedural and substantive provisions that create liability and relief. *See generally*, Daniel W. Morton-Bentley, *The Rowley Enigma: How Much Weight is Due to IDEA State Administrative Proceedings in Federal Court?,* 36 J. Nat'l Ass'n Admin. L. Judiciary 428, 434, 467 (2016) ("The IDEA's judicial review provision is not a model of clarity . . . its multilayered administrative and judicial review procedure is predisposed toward confusion.").

In addition to the legal complexities, the parties have navigated a thorny procedural history—tethered to cases adjudicated by U.S. District Court Judge Phillip A. Brimmer. *See, e.g.,* 14-cv-2651. It is now before this court on separate, but related issues—as follows:

1. Whether the Administrative Law Judge ("ALJ") erred when she allowed Defendant to determine the extent of the harm it caused when it violated R.S.'s right to a FAPE, and to then determine the remedy for its own violation.
2. Whether the ALJ erred when she held that compensatory education was unavailable as a remedy in the absence of educational regression.
3. Whether the ALJ erred when she peremptorily eliminated private school placement as a potential remedy.

Wedded to the third issue is Defendant's affirmative defense—to wit, Defendant argues that res judicata applies based on a preliminary injunction issued by Judge Brimmer in an earlier case and affirmed by the Tenth Circuit.

The court is persuaded by Plaintiff's position on the first issue—*i.e.*, the ALJ wrongly delegated power to an educational agency—warranting remand. Because the second issue is tied to the first, it, too, requires further factual development by the ALJ to determine what compensatory education (if any) to which M.S. is entitled. Separately, the third issue also sways in favor of Plaintiff. Being a question of law—res judicata—the issue provides for ease of disposition; ever more so when the defense was a non-starter to begin with. The prior decision that Defendant relies upon was set in the preliminary injunction context. There is no final decision to preclude Plaintiff's case. The defense is rejected. Each of the issues before the court, therefore, will require remand and further factual development to assess the appropriate relief.

## BACKGROUND

On March 10, 2016, the Colorado Department of Education, Exceptional Student Services Unit, received a due process complaint filed by Plaintiff on behalf of his minor son, R.S., alleging that Defendant violated 20 U.S.C. §§ 1400 – 1482 and the Colorado Exceptional Children's Educational Act ("ECEA"), 1 CCR 301-8, by failing to provide him with FAPE. Plaintiff alleged that Defendant denied R.S. FAPE when it denied his enrollment at the Cheyenne Mountain Charter Academy ("CMCA") in 2014.

The ALJ found for Plaintiff on the liability issue—*i.e.,* denial of FAPE—from at least August 13, 2014 through October 16, 2014. Relevantly, on page 10 of the ALJ's October 3, 2016 decision, the ALJ stated:

> The ALJ concludes that Respondent did not provide FAPE to R.C.V.S. between August 13, 2014 and October 16, 2014. Accordingly, the ALJ ORDERS as follows:
>
> Respondent shall re-test R.C.V.S.'s early literacy skills through the DIBELS test, or a test of Respondent's ***choosing*** that assesses the same or similar early literacy skills as the DIBELS test if Respondent ***believes*** the DIBELS test is no longer appropriate due to the passage of time. If R.C.V.S.'s scores are below benchmark levels, Respondent, in coordination with ***the IEP team, shall decide what compensatory services*** are necessary in order to improve R.C.V.S.'s scores up to benchmark levels and will implement those services accordingly. If R.C.V.S.'s[3] scores are at benchmark levels, then nothing more is required of the District.

(*See* Schedule A at 10)[4] (emphasis added). Defendant then filed a Motion for Clarification on October 7, 2016, noting that R.S. had taken several DIBELS tests since the fall of 2014 and that

---

[3] The ALJ's decision refers to Plaintiff's child as R.C.V.S.; whereas the parties have referred to him as R.S. in these proceedings, providing no explanation for this change. R.S. will be used in these proceedings.

[4] Other than Schedule A, the referencing and numbering used in this recommendation is based on ECF numbering, denoted in the top right hand corner of a filing.

after the initial DIBELS assessments that were administered upon his return to school in October 2014, he received scores above benchmark levels on his next three DIBELS assessments. (AR at 666-676.)

After reviewing the Motion for Clarification, ALJ Light issued an Order on October 27, 2016, finding that Defendant had purportedly complied with the October 3, 2016 decision and that nothing further was required. (AR at 516.)

Having exhausted all administrative remedies, Plaintiff now appeals the October 3, 2016 decision and the subsequent October 27, 2016 order that flowed from it.

## STANDARD OF REVIEW

"Judicial review in IDEA cases differs substantially from judicial review of any other agency action, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review."[5] *Murray*, 51F.3d921, 927; *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 973 (10th Cir. 2004) (stating that the statute "sets up a unique standard for a federal court's review").[6] In reviewing an administrative record, a district court applies "a modified de novo standard in reviewing a hearing officer's decision." *Id*. It looks to the "record of the administrative proceedings" and "decide[s], based on a preponderance of the evidence, whether the requirements of the IDEA are met." *Nebo Sch. Dist*. 379 F.3d 974. In so doing, a

---

[5] In a lawsuit brought to challenge an IDEA administrative finding, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

[6] The Tenth Circuit is yet to determine who carries the burden of persuasion. Case law from sister circuits is instructive—specifically, "a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." See *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989).

district court must give "due weight" to the hearing officer's findings of fact, which are "considered prima facie correct." *Id.* Although the district court may accept additional evidence, such evidence is merely supplemental to the administrative record. *See* 20 U.S.C. § 1415(i)(2)(B); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472–73 (9th Cir. 1993). The district court's proceedings "maintain [a deferential] character of review," *Nebo Sch. Dist.* 379 F.3d 974.[7] Relevantly, although deference is afforded to questions of fact, questions of law are reviewed under a de novo standard. *See O'Toole v. Olathe District Schools Unified School District No. 233*, 144 F.3d 692, 699 (10th Cir. 1998) ("[A]ny legal conclusions [are reviewed] under our usual de novo standard").

"Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors." *See Florence County Sek Dist. Four v. Carter*, 510 U.S. 7, 15 (1993). The prerequisite of a "compensatory education award [is] a simple finding that a child has received an inappropriate education." *See MC. ex rel. J.C. v. Central Regional Sch. Dist*., 81 F.3d 389, 397 (3rd Cir. 1995).

---

[7] The standard of review varies between the circuits. *See* Andriy Kralmal *et. al*., *"Additional Evidence" Under the Individuals with Disabilities Education Act: The Need for Rigor*, 9 TEX. J. C.L. & C.R. 201, 204 (2004) (the IDEA "is silent about ... the standard of review," *i.e.*, degree of deference). For instance, the Sixth Circuit conducts a deferential review of factual determinations grounded in educational expertise. *N.W. ex rel. J.W. v. Boone Cty. Bd. of Educ*., 763 F.3d 611, 614 (6th Cir. 2014). The Seventh Circuit reviews administrative findings of fact under the substantial evidence standard so long as no additional evidence was offered and accepted. *M.B. ex rel. Berns v. Hamilton Se. Sch*., 668 F.3d 851, 860 (7th Cir. 2011). The Eighth Circuit locates its standard of deference somewhere between the de novo and substantial evidence tests with particular weight given to hearing officer credibility findings and educational policy determinations. *See, e.g., Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist*., 198 F.3d 648, 654-55 (8th Cir. 1999).

**ANALYSIS**

The parties do not dispute liability. What is in dispute is Plaintiff's relief—being, the manner in which the specific relief for R.S. is to be determined. Critically, there is little factual analysis by the ALJ that underscored the decision *not* to grant relief on October 27, 2016, despite the ALJ finding Defendant liable under the statute two weeks earlier.[8] For the reasons that follow, error exists in the ALJ's decision-making that warrants remand and further factual development of the record.

**A. Whether the ALJ erred when she allowed Defendant to determine the extent of the harm it caused when it violated R.S.'s right to a FAPE, and to then determine the remedy for its own violation**

Plaintiff challenges the ALJ's decision for not adhering to her statutory duty to tailor relief to R.S. after finding that Defendant was liable under the statute. Plaintiff contends that the ALJ allowed Defendant "to [1] determine the extent of its harm to R.S., [2] the method of determining that harm, and [3] the appropriate remedy for that harm." (Doc. No. 30 at 13.) In short, Plaintiff contends that R.S.'s relief was wrongly delegated to individuals expressly barred from 'standing in the shoes' of the ALJ. The court agrees. The relevant case law fortifies this view. Elucidation of each case confirms as much.

The first is *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005). There, the hearing officer awarded the student in question 810 hours of compensatory education to remedy the school district's denial of a FAPE for four and a half years. 401 F.3d at 518. He

---

[8] Note, there were tests taken by R.S. (and test scores) in this interim period that was said to support Defendant's Motion for Clarification on October 7, 2016 and the subsequent ALJ decision on October 27, 2016 (AR at 666-676); but it is the directive on page 10 of the ALJ decision on October 3, 2016 that Plaintiff challenges—arguing that the directive was wrong to begin with, tarnishing everything that followed because it was inconsistent with the statute itself.

also vested the student's IEP team with the power to reduce or discontinue compensatory services if and when the IEP team determined that the student either no longer needed or was no longer benefitting from the compensatory education. *Id.* Specifically, "[t]he team's decision that [the student] no longer needs or is not benefitting from this award of compensatory education services will terminate this award." *Id.* at 520. The district court affirmed. *Id.* at 526. On appeal, the District of Columbia Circuit reversed the district court's ruling—holding that hearing officers may not authorize IEP teams to reduce or discontinue awards of compensatory education. *Id.*

In reversing the district court decision, the District of Columbia Circuit reasoned that the "IDEA due process hearings 'may not be conducted by an employee of the State educational agency or the local educational agency involved in the education or care of the child.'" *Id.* (citing 20 U.S.C. § 1415(f)(3)). An IEP team, in contrast, is statutorily required to include a representative of the local educational agency. 20 U.S.C. § 1414(d)(1)(B)(iv). Since the IEP team was delegated power to reduce or terminate the compensatory award initially set by the hearing officer, the court held that "the IEP team would in effect exercise the officer's powers." *Reid*, 401 F.3d at 526. Stated another way, "while the IEP team certainly must monitor [the student's] progress and coordinate compensatory relief with his current IEP, a delegation that permits the team to reduce or terminate his awarded amount of compensatory education exceeds the statute's bounds." *Id.* at 527.

Further, the District of Columbia Circuit held that the fact that the IEP team was comprised of nonemployees, including the student's mother, did not change the court's ultimate conclusion because "under the statute, the hearing officer may not delegate his authority to a

group that includes an individual specifically barred from performing the hearing officer's functions." *Id.* at 526.

The next case, *Bd. of Educ. of Fayette Cty. v. L.M.*, 478 F.3d 307, 317–18 (6th Cir. 2007), piggy-backs on *Reid*'s reasoning. Specifically, the Sixth Circuit held that the ALJ violated the statute because instead of requiring a certain number of hours of compensatory education, the ALJ ordered the student's IEP team to determine the type and duration of compensatory services the student was to receive. *Id*. In adopting *Reid*, the Sixth Circuit further stated that division between the hearing officer duties and the IEP "creat[es] a clean and clear separation by barring altogether an IEP team's power to terminate a compensatory-education award." *Id.* This conclusion was drawn irrespective of whether the student was enrolled in the school or not. *Id.* ("T.D. is not currently enrolled in the School District, so the possibility of the School District exerting an undue influence in his particular case is not great, but we decline to approve a practice that might have such an impermissible effect in the future.")

In *M.S. ex rel. J.S. v. Utah Schools for Deaf and Blind*, 822 F.3d 1128 (10th Cir. 2016), the district court refused to resolve the placement issue (plaintiff's requested relief), leaving the matter entirely to the discretion of the IEP team on remand. In rejecting the district court's delegation—and in relying on *Reid* and *L.M.'s* reasoning (adopting "it as our own")—the Tenth Circuit stated:

> Allowing the educational agency that failed or refused to provide the covered student with a FAPE to determine the remedy for that violation is simply at odds with the review scheme set out at § 1415(i)(2)(C). Furthermore, as noted by J.S., such an approach could trap M.S. in an endless cycle of costly and time-consuming litigation. That is, by remanding the placement issue to the IEP team, J.S. will have no recourse but to seek another due process hearing, and potentially file another federal lawsuit should the IEP team refuse to place M.S. at Perkins.

9

*Id.* at 1136. The Tenth Circuit concluded, however, "that the passage of time and additional developments might bear significantly on the issue of M.S.'s placement." *Id.* To help mitigate this concern, it was noted that the statute allows for the presentation of additional evidence at the request of a party and empowers the district court to "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(ii).[9]

These cases are dispositive of the issue here—particularly the Tenth Circuit's recent *M.S.* decision. The reason is two-fold. *First*, each case parallels with the present. The common thread running through each is the outsourcing of the ALJ's duty to a third-party in violation of the statute. The provisions of the statute provide that a hearing officer conducting a hearing "shall, at a minimum *not* be an employee of the State educational agency or the local educational agency involved in the education or care of the child; or a person having a personal or professional interest that conflicts with the person's objectivity in the hearing." 20 U.S.C. § 1415)3)(A). Under the statute, "the hearing officer may *not delegate his authority* to a group that includes an individual specifically barred from performing the hearing officer's functions." *Reid*, 401 F.3d at 526 (emphasis added).

In this case, the ALJ erred in delegating her authority to individuals barred under the statute. The ALJ did so by mandating that Defendant re-test R.S., permitting Defendant to

---

[9] It is worth noting that the level of briefing in these three cases, and the circuit opinions themselves, are detailed as they are thorough. The parties and the decisions below articulated precisely what each was seeking. This comes in stark contrast with Plaintiff's prayer of relief in his verified complaint. (Doc. No. 1 at 10-11.) Whether it be additional tutorial hours or other more specific remedies, Plaintiff would be well served in using a laser-like focus to articulate the specific and concrete remedies it seeks—and then develop the record before the ALJ to support that evidence. This is one case where the parties should have the 'end in mind.' If the record is not properly developed on remand with the seeking of additional evidence, this case has the potential to be become a merry-go-round, something that the parties (no doubt) disfavor.

"choos[e]" the test if Defendant "believe[d]" the previous test was no longer appropriate. (*See* Schedule A at 10). And then, if the scores were below benchmark, Defendant was mandated to "coordinat[e] with the IEP team … to decide what compensatory services [were] necessary." *Id.*

Although some degree of commonsense underscores aspects of the ALJ's decision, it is at odds with the statute itself. Indeed, in this case, the ALJ not only erred by delegating the compensatory services to the IEP team (which squares with the abovementioned cases), but the ALJ erred by affording Defendant the scope to 'pick and choose' the testing methods that determined compensation—affording Defendant broad power beyond what is contemplated by the statute. This gave Defendant "undue influence on the delegated decision" because those testing methods (and its choice) were wedded to the compensatory award. *M.S.*, 822 F.3d 1135; *see also Reid*; 478 F.3d at 318 (same). As such, because the ALJ failed to mandate the tests that R.S. would take—and because the award was to be determined by an IEP team in contravention of prevailing case law—the court recommends that the case be remanded for further factual development and implementation.

A *second* reason further reinforces Plaintiff's position. Nowhere in Defendant's brief does it address the fact that it was Defendant, not the ALJ, who could 'pick and choose' the testing methods relevant to R.S.—being a wrongful delegation of the ALJ's duty. Granted, the Tenth Circuit's *M.S.* decision focused on the delegation to the IEP team; rather than the school district itself, but the decision more broadly held that *any* delegation to an educational agency is inconsistent with the statute. *M.S.*, 822 F.3d 1135-6 ("Allowing the educational agency that failed or refused to provide the covered student with a FAPE to determine the remedy for that

violation is simply at odds with the review scheme set out" in the IDEA.). This is particularly true where, as here, the student is still enrolled in the school that caused the violation. *Id.*

Still, even if the Tenth Circuit did not hold what it did (nor *Reid* and *L.M.*), it is difficult to disavow the plain meaning of the statute that bars a state or local "agency" from being involved in the work of the hearing officer. 20 U.S.C.A. § 1415)3)(A). Because of this, and since Defendant has failed to meaningfully rebut Plaintiff's argument, the ALJ's deficiencies cannot be revived. *Cf. Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002). Remand is, therefore, warranted.

In sum, it is critical to appreciate that what Plaintiff *is* challenging in this case *is* the wrongful delegation of power to an educational agency.[10] Plaintiff is correct in this challenge. Whether delegation be to Defendant (or an IEP team), the statute is clear: the hearing officer *must* determine the relief if liability is established. In mandating remand, however, the parties must have some opportunity to present evidence regarding R.S.'s specific educational deficits resulting from his loss of FAPE and the specific compensatory measures needed to best correct those deficits (if any). Realizing that the passing of time provides an additional layer of complexity, the court still recommends that there be further factual development of the record and the ALJ's expertise in this field be fully utilzed. By doing so, and by examining the cases

---

[10] While the parties have not raised the issue, *Chevron* deference would not apply because there is no ambiguity in the statute to afford such deference. *See SAS Institute Inc. v. Iancu*, __ U.S. __, 2018 WL 1914661, at *8 (Apr. 24, 2018) ("[W]e are left with no uncertainty that could warrant deference. The statutory provisions before us deliver unmistakable commands.") So too, here. *See* 20 U.S.C.A. § 1415)3)(A). Even if such deference did apply, the same result would yield.

identified in this opinion, the ALJ will be on firmer footing to make the determination it needs to in accordance with the statute.[11]

### B. Whether ALJ erred when she held that compensatory education was unavailable as a remedy in the absence of educational regression.

As foreshadowed earlier, the second issue before the court is so entwined with the first that they travel together. The ALJ found that Defendant is liable under the statute, but has not afforded any relief to compensate for Plaintiff's loss. Indeed, the evidence that formed the bases for denying R.S.'s relief stems from a wrongful delegation of power as addressed above. Given that remand is warranted for this wrongful delegation of power (and that further factual development will flow from such remand), it follows that compensatory education can be determined upon reconsideration (if any).

To be sure, however, the court expresses no opinion as to whether Plaintiff will be successful before the ALJ when this issue is reconsidered. The court does not intend by this opinion to suggest the result that should be reached on remand; rather, the court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew.

---

[11] *Boone Cty. Bd. of Educ.*, 763 F.3d at 614 (The education agency of the ALJ is "presumed" to have "educational expertise.") In light of this, *inter alia*, remand is the only sensible option that the court can exercise in its discretion—particularly given the expertise of the educational agency. And as alluded to earlier, there is a dearth of evidence in the record relevant to the issue of relief. Even that evidence has been tarnished by a wrongful delegation of power by the ALJ—meaning that, there is, effectively no evidence. Because of this, and since the parties have not sought the reopening of further evidence in this case, the court recommends remand for further factual development. *See Reid*, 401 F.3d 516 ("[I]n light of the absence of pertinent findings in the administrative record and given that both parties previously filed cross-motions for summary judgment rather than exercising their right to request consideration of additional evidence, the district court may determine that the appropriate relief is a remand to the hearing officer for further proceedings."); *see also JH ex rel. JD v. Henrico County Sch. Bd.*, 395 F.3d 185, 198 (4th Cir.2005) (remanding IDEA suit to district court with instructions to remand to hearing officer); *Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 152 F.3d 1159, 1160 (9th Cir.1998)(same).

## C. Whether the ALJ erred when she peremptorily eliminated private school placement as a potential remedy

Plaintiff contends that ALJ Light peremptorily denied the possibility of private school placement as a remedy because that remedy was sought in a prior case—specifically: *Smith v. Cheyenne Mountain Sch. Dist. 12*, No. 14-02651-PAB-CBS, 2014 WL 5315033, at *1 (D. Colo. Oct. 17, 2014), order clarified, No. 14-CV-02651-PAB-CBS, 2015 WL 4979773 (D. Colo. Aug. 20, 2015) (Brimmer J.).

In *Smith*, R.S.'s mother sought injunctive relief in the United States District Court for the District of Colorado, requesting, *inter alia*, that Cheyenne Mountain School District be ordered to fund the private school placement. Judge Brimmer denied that preliminary request; and, instead held that the statute's stay-put provisions required Defendant to maintain R.S. at Cheyenne Mountain Charter Academy. *See Re Smith*, 2014 WL 5315033, at *3; *see also* 20 U.S.C. § 1415(j). Judge Brimmer's decision was subsequently affirmed in *Smith v. Cheyenne Mountain Sch. Dist.* 12, 652 F. App'x 697, 698 (10th Cir. 2016).[12] Defendant now relies on the collective weight of Judge Brimmer's decision and its affirmance in the Tenth Circuit to preclude Plaintiff from seeking private school placement under the doctrine of res judicata. (Doc. No. 42 at 13.)

A claim is barred by claim preclusion if four elements are met: (1) a final judgment on the merits in the prior suit; (2) the prior suit involved the same parties or their privies; (3) identity

---

[12] Note, in some case in the Tenth Circuit have held that three elements, not four, must exist: (1) a judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits. *See Satsky*, 7 F.3d at 1467; *Lowell Staats Mining Co.*, 878 F.2d at 1274 (same). While the court, here, recommends adoption of the more recent *Plotner* framework over *Satsky*, the issue is of no moment in this case because the first element—common to both frameworks—cannot be met.

of the cause of action in both suits; and (4) a full and fair opportunity to litigate the claim in the prior suit. *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1168 (10th Cir.2000); *King*, 117 F.3d at 445; *Satsky*, 7 F.3d at 1467.

The doctrine of res judicata is "intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudication." *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993). "Res judicata, or claim preclusion, precludes a party or its privies from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits." *King v. Union Oil Co. of Cailf.*, 117 F.3d 443, 445 (10th Cir. 1997) (citing *Lowell Staats Mining Co., Inc. v. Philadelphia Elec. Co*., 878 F.2d 1271, 1274 (10th Cir. 1989)). More specifically, "[w]here a second suit between the same parties or their privies is on the same cause of action, the final judgment in the prior action is conclusive as to all matters which were actually litigated as well as those which could have been litigated." *Spence v. Latting*, 512 F.2d 93, 98 (10th Cir. 1975)

Fatal to this affirmative defense from the onset is that there is no final judgment upon which to anchor Defendant's position. The decision upon which Defendant relies was set in the context of a preliminary injunction. While the merits of the case are assessed for the purposes of relief, that assessment is made at the onset of the proceedings. A preliminary injunction order, by its very nature, cannot form the basis of a res judicata claim. Courts have held that such orders are not a final determination on the merits. *See Watrous v. District Court of the United States for the District of Colorado*, the Tenth Circuit held that "the denial of [a] preliminary injunction [is] not an adjudication of the ultimate rights in controversy. It [is not] conclusive on the court or the

rights of the plaintiffs at a subsequent hearing." 207 F.2d 50, 58 (10th Cir. 1953); *Tobacco Co. v. Engida*, 611F.3d1209, 1217 (10th Cir. 2010) (injunction decision "is not equivalent to actual success on the merits."); *see also Hunter v. Atchison*, T. & S. *F. Ry. Co*., 188 F.2d 294, 299 (7th Cir. 1951) ("The decision of the trial court on granting the motion for preliminary injunction will not estop either of the parties on the trial of the case on its merits, nor would any determination of those questions by this court on appeal be binding on the trial court nor upon either of the parties in considering and determining the merits of the controversy."); *see also Mesabi Iron Co. v. Reserve Mining Co.*, 270 F.2d 567, 570 (8th Cir. 1959) (a TRO ruling "may not be invoked as res judicata"); *Cf. Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 396 (1990) ("'[D]ismissal ... without prejudice' is a dismissal that does not 'operat[e] as an adjudication upon the merits,' and thus does not have a res judicata effect." (citation omitted)).[13]

In sum, Defendant's res judicata defense is misplaced. In rejecting the defense, however, it is important to note that this recommendation does *not* address the substantive issue of private placement of R.S. in favor of Plaintiff, a matter which the ALJ must address and resolve on remand.

---

[13] In *Smith,* on appeal. 12, 652 F. App'x 697, the Tenth Circuit simply affirmed what was found before Judge Brimmer, the Tenth Circuit stating: "we affirm the preliminary injunction requiring the School District to maintain R.S.'s educational placement at CMCA . . . [and] affirm the court's denial of Ms. Smith's alternative claim for private-school funding." *Id.* at 701.

# CONCLUSION

**WHEREFORE**, for the foregoing reasons, this court

**RECOMMENDS** that ALJ Light's decision be **REVERSED** and that the case be **REMANDED** consistent with the reasons in this Recommendation**.**

# ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the

district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections).

Dated this 9th day of May, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

## SCHEDULE A

ALJ Light's October 3, 2016 decision and the subsequent October 27, 2016 order that flowed from it. These documents are found in the Administrative Record. (Doc. No. 27 at 505-516.)